[No. 35637. Department One. April 27, 1961.]

WHITE & BOLLARD, INC., *Appellant*, v ELENORE GOODENOW, *Respondent.*\*

\*Reported in 361 P. (2d) 571.

*Douglas C. Anderson* and *Sidney C. Volinn*, for appellant.

*Ernest R. Cluck*, for respondent.

ROSELLINI, J.—This is a suit by a real estate broker to recover a fee. Through the services of the appellant, a prospective purchaser was procured, who entered into an "earnest-money agreement" with the respondent. This agreement provided for the sale and purchase of certain real estate and the payment of a commission of $1,200 to the appellant. The agreement was made subject to the condition contained in the following paragraph:

"This offer is subject to and contingent upon Purchaser obtaining satisfactory financing within a period of 90 days from date of the execution of this agreement for the construction of apartment house to be designed by Purchaser. Purchaser to exercise reasonable speed and diligence in preparing plans and making all necessary applications for financing. Purchaser shall, prior to the expiration of the 90 day period, notify Sellers as to whether or not satisfactory financing has been arranged and, in the event it has not been arranged, then said earnest money deposit shall be returned and both parties shall be relieved of all liability under this agreement. In the event Purchaser arranges satisfactory financing before the expiration of 90 days, he shall notify Seller in writing and said sale shall be closed within 15 days of said notification in accordance with this agreement.

"It is understood that purchaser intends to construct an apartment building on the property, and title is to be conveyed to purchaser on closing, seller to subordinate to construction and permanent mortgages, and purchaser to

execute a mortgage in favor of seller subject only to the construction and permanent mortgages."

The agreement, which was on a printed form, also contained the following provision:

"If financing is required purchaser agrees to make immediate application therefor, sign necessary papers, pay required costs, and exert best efforts to procure such financing."

A note for $3,000, payable on closing of the transaction, was given in lieu of earnest money. The note and the agreement were signed "Melvin D. Lurie, as agent for a corporation to be formed."

The agreement was also signed by the respondent, who accepted and approved the agreement and agreed to carry out all of its terms and to pay the agent's commission. Prior to the expiration of the ninety-day period, however, she sold the property to others. The appellant thereupon brought this suit to recover the promised commission, alleging that the purchaser was at all times willing and able to perform, in accordance with the terms of the agreement. At the trial of the action, the respondent challenged the sufficiency of the complaint. This challenge was sustained and the action was dismissed with prejudice.

While the court did not enter findings of fact or conclusions of law, the parties are agreed that the court found the agreement too indefinite to enforce. It would appear from the statement of facts, which was signed by the judge and filed in this court, that the court's decision turned on the fact that the agreement was signed by Lurie as agent for a nonexistent corporation. It was apparently concluded that no one was bound under the contract as purchaser. The appellant contends, however, that Lurie was bound, and that, had the property not been sold, he would have formed a corporation which would have ratified the agreement.

In discussing the liability of agents to third persons, 2 Restatement, Agency, 721, § 326, states the rule to be, where the principal is known to be nonexistent or incompetent:

"An agent purporting to make a contract with another for a principal whom both know to be nonexistent or wholly incompetent does not necessarily become a party to the purported contract; unless otherwise agreed, the agent is a party to such a contract."

The comment which follows the statement of the rule reads:

"*a.* A person may knowingly go through the form of entering into a contract with a nonexistent person or may believe in the existence of a legal person where no legal person exists. If the understanding of the parties is that, at all events, the one purporting to act as agent is not to be a party, he is not subject to liability either upon the contract or otherwise, unless he has been guilty of some misstatement in the transaction. On the other hand, there is a strong inference that a person intends to make a present contract with an existing person. If, therefore, he knows that there is no principal capable of entering into such a contract, it is inferred that, although the contract is nominally in the name of the nonexistent person, he intends that the person signing as agent should be a party, unless there is an indication to the contrary. . . . Where a promoter makes a contract in the name of an as yet nonexistent corporation, it is permissible to find either that the promoter is intended to be a party or that an offer is being made which may be accepted by the corporation after its birth. It is also possible to find an agreement that the promoter is a party to the transaction and is to remain liable until there is a novation by which the corporation becomes a party in substitution."

■ Aside from the phrase appearing after the signature of Lurie, there was nothing in this agreement to indicate that he was not intended to be a party. There was an agreement that the purchaser would proceed immediately to apply for a loan. Obviously this could not be done by a corporation not then in existence. Added to this is the strong inference, referred to in the Restatement, that a person intends to make a present contract with an existing person. Unless Lurie was bound under this contract, no one was bound, and its execution was a useless act. The only reasonable assumption, since nothing to the contrary appears in the instrument, is that the parties

intended that Lurie should be bound; that if the corporation was formed, it should have the right to adopt the agreement and if it did so, Lurie would no longer be personally obligated; and that he signed the agreement in the way that he did in order to protect his right to transfer it to the corporation.

The respondent contends that the agreement was too indefinite in other respects to enforce, and that consequently she was not bound under it. First, she claims the agreement is too indefinite because no duty is placed upon Lurie to form a corporation, and that the characteristics of the proposed corporation are not set forth. We do not see how this affects the validity of the contract to sell the land. To form a corporation was simply not a part of the agreement, since the respondent did not exact from Lurie a promise to do so.

The respondent also urges that the agreement is unenforcible because the terms of the mortgages referred to therein are not spelled out in the instrument. The answer to this is the same as that which we have given to her preceding objection. The agreement shows that she was willing to subordinate her mortgage to others which it was contemplated that the purchaser would be required to give. The terms of those mortgages were matters to be agreed upon between the mortgagor and mortgagee; and the respondent evidently was content to trust the purchaser to see that the terms were reasonable.

In *Hedges v. Hurd,* 47 Wn. (2d) 683, 289 P. (2d) 706, it was contended by the defendant, who had entered into an earnest-money agreement with the plaintiff and had thereafter sold the land to a third party, that the agreement was too indefinite to enforce because it called for the execution of a second contract, the terms of which had not been agreed upon. In holding that an earnest-money agreement need not be so definite in its terms that it can be specifically enforced, but is sufficient if an action for damages will lie for its breach, the court said:

"There is a practicable reason for the widespread use of the relatively simple earnest-money receipt. It lies in

the real-estate practice that has grown up, or the manner in which sellers and buyers nowadays consummate a sale or conveyance of real estate. Usually a seller lists property with a real-estate broker. The property is shown to various prospects by the real-estate broker. The seller may or may not see or contact a prospect or purchaser until after a deal is consumated. Ordinarily, no one is particularly interested or has the time to work out a contract (covering a variety of contingencies of some possible future interest to the parties) in minute detail. At this stage, the parties are interested only in the execution of a simple agreement which will have some effective legal significance as to both. They anticipate that the execution of an earnest-money receipt and agreement is not without some legal significance and effect."

The court then found that the agreement in question contained all of the elements necessary to render it binding and entitle the buyer to sue for damages for its breach. The elements were: consideration, an adequate description of the property, specification of the total purchase price, the method of payment of principal and interest; provisions for prorating taxes, insurance, and liens; for payment of water and other utilities, for possession, and for the deposit in escrow of the balance of the down payment by the purchasers, and a warranty deed by the seller.

All of these matters were covered in the agreement under consideration here. The fact that the duty to purchase was made subject to a condition does not render it any less a binding contract.

Next, the respondent claims an ambiguity in regard to the earnest money, which is not money but a promissory note, due on closing. Because the contract recites that the "cash on closing" is to include the earnest money, she contends that it is not clear that money is to be substituted for the note on closing. Only a very strained construction would lead to such a conclusion. There can be little question but that the agreement was to pay the note on closing. Even if there were such an ambiguity, it would not render the contract a nullity. It would merely present a question of interpretation to be resolved by the court in the event of a suit for enforcement.

■ The respondent's final argument in support of the judgment is that there was no consideration for her promise to sell, because the purchaser's undertaking was conditioned on his obtaining satisfactory financing, and he could not be forced to do so. It is true that the purchaser could not be compelled to obtain satisfactory financing, and in this respect the contract is not subject to a decree of specific performance. However, the promise which he made was, not to secure the financing, but to endeavor to do so, and to purchase the property if he was successful. In agreeing to immediately seek and use his best efforts to secure financing, the purchaser promised to do positive acts. This was a legal detriment to him, and is sufficient consideration to support a return promise. *Sargent v. Drew-English, Inc.*, 12 Wn. (2d) 320, 121 P. (2d) 373, and cases cited therein. If he failed to keep this promise, a suit for damages would lie.

■ The rule we have adhered to is that, when a real-estate broker has procured a prospective purchaser who is accepted by the seller, and the seller promises to pay the broker a certain commission for services rendered, the broker has earned the commission and the promise to pay it may be enforced, and that where the seller indicates his acceptance of the purchaser by entering into a binding and enforcible agreement with him, he may not thereafter question the qualifications and ability of the purchaser to perform. *Dryden v. Vincent D. Miller, Inc.*, 56 Wn. (2d) 657, 354 P. (2d) 900, and cases cited therein.

■ Implicit in this rule is the requirement that the purchaser be willing to purchase, and that in contracting with the seller, he has agreed to purchase the property. Here we do not have such an unqualified promise, but rather a conditional promise, and the respondent's right to collect his fee was also made conditional upon the purchaser's obtaining satisfactory financing. The securing of such financing was a condition precedent. Until it had occurred, the respondent was not obliged to sell, and the purchaser was not obliged to buy the property, and the appellant was not entitled to its fee. But the respondent was

obliged to hold the property for the purchaser during the ninety-day period, and this is a promise which she made to, and for the benefit of, the appellant as well as the purchaser. In selling to third persons and thus putting it out of her power to perform the agreement, she breached her contract. In 1 Restatement, Contracts, 451, § 306, we find the rule thus stated:

"Where failure of a party to a contract to perform a condition or a promise is induced by a manifestation to him by the other party that he cannot or will not substantially perform his own promise or that he doubts whether though able he will do so, the duty of such other party becomes independent of performance of the condition or promise. He has power to nullify his manifestation of unwillingness or inability by retracting it, so long as the former party, in reliance thereon, has not changed his position.

"*Comment*:

"*a.* No man is compelled to do a useless act, and if performance of a condition will not be followed by performance of the promise which is conditional, it is useless for the intended purpose and it is therefore unnecessary to perform the condition. A promisee in judging whether performance of a condition will not be followed by performance of the promise is justified in taking the other party at his word. Nevertheless, if the condition could not or would not have been performed had there been no repudiation of the promise, the promisor is not precluded from asserting the requirement of the condition. In such a case both parties are free."

▉▉▉▉ Applying the rule to the facts, we find that the respondent manifested that she would not perform her agreement when she sold her property to others. She did not retract this manifestation, and the performance of the condition imposed on the appellant was excused; that is, the purchaser was not required to secure satisfactory financing for a building which he could not erect. However, he could not maintain a suit for damages against the respondent without showing that, had she not disposed of the property, he could and would have secured the financing. The appellant likewise cannot maintain its suit for the broker's fee without showing that the condition could and

would have been met. In its complaint, it alleged that the purchaser had at all times been ready and willing to perform. Under such an allegation, the necessary proof can be introduced.

If the appellant breached its fiduciary duty to the respondent by persuading her in bad faith to enter into a bargain which would be disadvantageous to her, that is a matter of defense which may be brought out at the trial.

We conclude that the contract is not too indefinite to enforce and does not lack consideration; and that the complaint states a claim upon which relief can be granted.

The judgment is reversed and the cause remanded for trial.

WEAVER, OTT, FOSTER, and HUNTER, JJ., concur.